# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BENNESSER HARPER o/b/o :
JUSTIN J. HARPER,
                                                   :
      Plaintiff,
vs.                                        :        CA 05-0070-C

JO ANNE B. BARNHART,       :
Commissioner of Social Security,
                                                     :
      Defendant.

## MEMORANDUM OPINION AND ORDER

The plaintiff, Bennesser Harper, brings this action on behalf of her son, Justin J. Harper, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying Justin's application for child's insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the

Commissioner's proposed report and recommendation, and the oral arguments of the parties on February 15, 2006, the undersigned determines that the Commissioner's decision denying child's insurance benefits is due to be affirmed.[1]

The Administrative Law Judge (ALJ) made the following findings:

1. The claimant's date of birth is October 20, 1986.

2. The claimant has never engaged in substantial gainful activity.

3. The medical evidence establishes that the claimant has migraine headaches, which is a "severe" impairment under the Act.

4. The claimant does not have an impairment listed in, or medically equal to an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant does not have severely disabling limitations in specific functions caused by a medically determinable physical or mental impairment.

6. The claimant does not have disabling limitations resulting from chronic illnesses that are characterized by frequent illnesses or attacks, or exacerbations and remissions.

7. The claimant does not have disabling limitations resulting

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

>	from the nature of the treatment required or the effects of medication.
>
>	8.	The claimant has the following limitations in the appropriate domains:
>
>	•	Acquiring and using information – none
>	•	Attending and completing tasks – none
>	•	Interacting and relating with others – none
>	•	Moving about and manipulating objects – less than marked
>	•	Caring for oneself – none
>	•	Health and physical well-being – marked
>
>	9.	The claimant's assertions relative to symptomatology, functional limitations and restrictions of activities of daily living have been considered in light of the factors set forth in 20 CFR § 416.929 and SSR 96-7p, and are found to lack corroboration or substantiation in the medical evidence, and are not credible as to a disabling impairment.
>
>	10.	The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.924(d)).

(Tr. 36-37) The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

Prior to February 20, 1990, a child claimant would be found eligible for benefits under the Commissioner's regulations only if he was not performing

substantial gainful activity, if his impairment met the duration requirement, and if his impairment was medically equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 526, 110 S.Ct. 885, 889, 107 L.Ed.2d 967 (1990). The Commissioner's regulations made no inquiries corresponding to the fourth and fifth steps of the adult analysis. *Id.* In *Zebley,* the Supreme Court stated in plain words that "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Id*. at 529, 110 S.Ct. at 890. The High Court rejected the Commissioner's argument that analysis of child disability claims of the type performed at steps four and five of the adult analysis is not feasible. *See id.* at 539, 110 S.Ct. at 896.

> The fact that a *vocational* analysis is inapplicable to children does not mean that a *functional* analysis cannot be applied to them. An inquiry into the impact of an impairment on the normal daily activities of a child of the claimant's age -- speaking, walking, washing, dressing, feeding oneself, going to school, playing, etc. -- is, in our view, no more amorphous or unmanageable than an inquiry into the impact of an adult's impairment on his ability to perform "any other kind of substantial gainful work which exists in the national economy[.]"

*Id.* at 539-540, 110 S.Ct. at 896 (citation omitted).

Following the *Zebley* decision, the Commissioner made wholesale revisions in the regulations addressing child disability claims. The

4

Commissioner began employing a four-step sequential analysis for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(c)-(f). The four steps were as follows: (1) If the child is working and that work is substantial gainful activity, he will be found not disabled regardless of his medical condition or age, education, or work experience; (2) If the child does not have any severe impairment(s) he will be found to be not disabled; (3) If the child has an impairment(s) which meets the duration requirement and is listed in appendix 1, or is equal to a listed impairment, he will be found to be disabled; and (4) If the child has a severe impairment(s) but that impairment(s) does not meet or equal in severity a listed impairment, the impact of the child's impairment(s) on his overall ability to function independently, appropriately, and effectively in an age-appropriate manner is assessed and this individualized functional assessment will be used to decide whether the child has an impairment(s) that would prevent an adult from engaging in substantial gainful activity and, thus, to determine whether or not the child is disabled. *Id.*

The comparable severity standard was eliminated with passage of the Personal Responsibility and Work Opportunity Act of 1996. *See* Pub.L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (directing the Commissioner to eliminate the individual functional assessment set forth in the regulations at 20

C.F.R. §§ 416.924d and 416.924e). This act, which was signed into law on August 22, 1996, wrought another change in the disability determination process for children. The 1996 Act provides that "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations implementing this definition of disability provide a three-step process for determining eligibility for benefits which is identical to the first three steps of the post-Z*ebley* analysis, save with respect to the third step. The first step still requires the ALJ to determine whether the child is engaged in substantial gainful activity and the second step still requires the ALJ to determine whether the child has a severe impairment or combination of impairments. At the third step, the ALJ must determine whether the severe impairments "*meet, medically equal, or functionally equal the listings. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings.*" 20 C.F.R. § 416.924(d)

(2004) (emphasis in original).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[], medically equal[], or functionally equal[] the [L]istings." A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment."
>
> Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equivalent" to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:
>
>> (i)  Acquiring and using information;
>> (ii) Attending and completing tasks;
>> (iii) Interacting and relating with others;
>> (iv) Moving about and manipulating objects;
>> (v)  Caring for [one]self; and
>> (vi) Health and physical well-being.
>
> The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain."

*Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279,

(11th Cir. 2004) (internal citations omitted).

The new standard clearly is more stringent given Congress's decision, as stated in the House conference report, to confine the definition of childhood disability to the first three steps of the sequential evaluation process. *Hart ex rel. Thomas v. Chater*, 963 F.Supp. 835, 839 (W.D.Mo. 1997). The report reads in pertinent part as follows:

> "The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition. . . . The conferees are also aware that SSA uses the term 'severe' to often mean 'other than minor' in an initial screening procedure for disability determination and in other places. The conferees, however, use the term 'severe' in its common sense meaning."

*Id*. (quoting 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104-725 (July 30, 1996)); *see also* 20 C.F.R. § 416.924(a) (2004) ("We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review

your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.").

Plaintiff contends that the following errors were made in this case: (1) the ALJ erred in failing to find Justin's depression a severe impairment; and (2) the ALJ erred in failing to find that Justin had a "less than marked" impairment in the domain of moving about and manipulating objects.

The ALJ specifically determined that Justin's depression is not a severe impairment. (Tr. 31 & 32)

> In regards to the claimant's alleged depression and decreased memory functioning, the Administrative Law Judge finds that the medical evidence of record does not substantiate such allegations and does not conclusively establish[] the presence of any severe psychological impairment on the claimant's behalf. The record documents only one self-initiated mental treatment exam for the claimant, and this evaluation itself is not documented in regards to the claimant's memory, emotional status and overall psychological functioning because there is no indication that a formal psychological exam was even performed. Rather, the treatment notes from Mobile Mental Health show only the claimant's allegations, his initial diagnosis and his recommended treatment. The claimant's performance in Dr. Davis' interview was mostly normal, except for his poor effort at memory testing. Dr. Davis even opined that the claimant did not meet the criteria for any psychological

> diagnosis. The claimant has not required any intensive psychological therapy, either in or out of the school environment. The undersigned is aware that the claimant's most recent academic marks are diminished in comparison to his previous school years, but the Administrative Law Judge emphasizes that the claimant's own teacher found the claimant unimpaired in all applicable domains and that the claimant has been enrolled in regular coursework (sic) at all times. In addition, the undersigned notes that Dr. Davis found no limitation in the claimant's ability to maintain attention and concentration. The claimant has been disciplined by his school for various reasons, but his teacher indicated that the claimant was popular with his peers and that he had no difficulty interacting and relating with others. Based on the record as a whole, including input from the claimant's own teacher and Dr. Davis, the Administrative Law Judge finds that the claimant is not clinically depressed and has no psychological, intellectual or emotional impairment that results in more than minimal functional limitations.

(*Id.* at 32) It is plaintiff's contention that the ALJ erred in finding Justin's depression to be non-severe in light of the low threshold showing necessary in this Circuit to establish a severe impairment. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").

The Court disagrees with the plaintiff's argument in this regard and finds, based upon the evidence of record referenced by the ALJ, that the finding that Justin's depression is not a severe impairment is supported by substantial evidence. In particular, Dr. Davis' failure to make any diagnosis

(Tr. 325), when combined with the fact that Justin did not follow-up at Mobile Mental Health for psychological treatment (*compare* Tr. 265-267 *with* Tr. 355) and the recorded observations of Justin's teacher that the claimant had no impairment in any domain, clearly establishes for this Court that Justin's depression is not a severe impairment. Moreover, even assuming the ALJ erred in failing to find Justin's depression a severe impairment, such error was harmless since the evidence of record establishes that this condition would not entail any significant limitation of function not already contemplated by the ALJ in his analysis of the functional equivalency issue.

Plaintiff's only other argument is that the ALJ erred in determining that plaintiff suffers from less than marked limitations in the domain of moving about and manipulating objects. This domain is concerned with "how well the child moves his body from one place to another and moves and manipulates things[.]" (*See* Tr. 33) The Court finds that the ALJ's finding that Justin suffers from less than marked limitations in this particular domain is supported by substantial evidence. Specifically, Justin reported to his treating orthopedic surgeon, Dr. Prasit Nimityongskul, on May 31, 2001, some four and one-half months after his femur fracture and other injuries (*see, e.g.,* Tr. 182), that he was "playing sports involving riding bikes, playing basketball and running."

(Tr. 235) Moreover, the record reveals no report from either reviewing or treating physicians or anyone at Justin's school that Justin had any limitation whatsoever in the domain of moving about and manipulating objects. (Tr. 141, 226, 234-236, 316 & 337) Accordingly, this Court can find no error with the ALJ's determination that Justin has less than marked limitations in the domain of moving about and manipulating objects.

## CONCLUSION

Based upon the foregoing, the Court **ORDERS** that the Commissioner's decision denying the application made on behalf of Justin J. Harper for child's insurance benefits be affirmed.

**DONE** and **ORDERED** this the 21st day of February, 2006.

    s/WILLIAM E. CASSADY
    **UNITED STATES MAGISTRATE JUDGE**